# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60583

United States Court of Appeals
Fifth Circuit
**FILED**
September 20, 2016
Lyle W. Cayce
Clerk

ANTHONY GIBSON,

                Plaintiff–Appellant,

versus

JEFFREY KILPATRICK, in His Individual Capacity;
CITY OF DREW, MISSISSIPPI,

                Defendants–Appellees.

---

Appeal from the United States District Court
for the Northern District of Mississippi

---

Before SMITH, BARKSDALE, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

    In this First Amendment retaliation case against the City of Drew, Mississippi, its former chief of police, Anthony Gibson, alleges that he was fired for suing the mayor, Jeffrey Kilpatrick, for retaliation. We affirm a summary judgment, concluding that although Gibson spoke as a citizen, his suit against Kilpatrick in his personal capacity was not on a matter of public concern and

thus was not protected speech. Gibson's state-law claim of malicious interference with employment ("MIE") against Kilpatrick is barred because Gibson failed to bring notice of the claim before suing as required by state law.

I.

This is the third iteration, in this court, of a small-town feud between the former police chief and mayor. In 2006, over Kilpatrick's objection, the Board of Alderman (the "Board") appointed Gibson chief. Shortly thereafter, Gibson learned that Kilpatrick was misappropriating city funds by using the city's gasoline card for personal trips. Gibson told various state and federal authorities, and the State Auditor launched an official investigation, in which Gibson assisted, that concluded in September 2008. Kilpatrick was ordered to pay back about $3000 of misappropriated funds.

Nine months later, Kilpatrick started placing written reprimands in Gibson's personnel file. The reprimands involved such allegedly serious conduct as showing up late to a meeting with the mayor because he was in the emergency room being treated for a knee injury. Similarly, Gibson was suspended for allowing city employees to play basketball in an uncompleted gym at the city civic center, even though the mayor had played basketball there a few weeks earlier. Kilpatrick also recommended to the Board several times that Gibson be terminated "for insubordination, lack of visibility in the community, and failure to work an adequate number of hours." *Gibson v. Kilpatrick* ("*Gibson II*"), 773 F.3d 661, 665 (5th Cir. 2014).

In December 2010, Gibson sued Kilpatrick in his individual capacity, claiming retaliation for protected First Amendment speech under 42 U.S.C. § 1983 and MIE and intentional infliction of emotional distress under Mississippi law. In October 2011, the Board fired Gibson, who then amended his suit

to claim that the city had retaliated against him for suing Kilpatrick, in violation of the First Amendment.

The district court granted summary judgment for the defendants on the state-law claims and held that Kilpatrick was not entitled to qualified immunity on the First Amendment retaliation claim; the parties cross-appealed. In *Gibson v. Kilpatrick*, 734 F.3d 395, 406 (5th Cir. 2013), we reversed the denial of qualified immunity, holding that Gibson's speech to state and local authorities about Kilpatrick's misuse of the gasoline card was not protected because he spoke in his capacity as chief of police. We declined to exercise supplemental jurisdiction over the MIE claim (the only tort claim Gibson had appealed) because it was tied to the interlocutory appeal of the denial of qualified immunity. *Id.* The Supreme Court vacated and remanded for reconsideration in light of *Lane v. Franks*, 134 S. Ct. 2369 (2014). *Gibson v. Kilpatrick*, 134 S. Ct. 2874 (2014) (mem.).

In *Gibson II*, 773 F.3d at 667, we determined that *Lane* did not significantly change the analysis and primarily was "an application of prior Supreme Court precedent." We again reversed the denial of qualified immunity, finding no violation of clearly established rights, and we declined to exercise jurisdiction over the MIE claim. *Id.* at 673. The Supreme Court denied certiorari. *Gibson v. Kilpatrick*, 135 S. Ct. 2318 (2015).

On remand, the only remaining issue was Gibson's First Amendment retaliation claim against the city, alleging that he was fired for suing the mayor. The city filed a supplemental motion for summary judgment, which the court granted in July 2015, holding that Gibson's speech in the initial complaint was "not a matter of public concern."

No. 15-60583

## II.

### A.

The First Amendment protects freedom of speech and "the right of the people . . . to petition the government for a redress of grievances." U.S. CONST. amend. I. Gibson brings claims under both the Speech Clause and the Petition Clause. Retaliation claims under both are analyzed in the same way. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 389 (2011). A plaintiff must show that "(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action." *Charles v. Grief*, 522 F.3d 508, 510 n.2 (5th Cir. 2008). To be speaking on a matter of public concern, the employee must speak in his capacity as citizen, not employee. *Connick v. Myers*, 461 U.S. 138, 147 (1983). The parties disagree on only the second and third prongs, both of which are legal questions "for the court to resolve." *Branton v. City of Dall.*, 272 F.3d 730, 739 (5th Cir. 2001) (citing *Connick v. Myers*, 461 U.S. 138, 147–48 n.7 (1983)).

### 1.

To see whether Gibson spoke as a citizen on a matter of public concern, we first must decide whether, in suing the mayor, he spoke as a citizen or an employee.[1] Most of his briefing addresses that issue, while the city devotes almost nothing to the question. Because in *Gibson II*, 773 F.3d at 672, we said

---

[1] In *Gibson II*, 773 F.3d at 667, following *Lane*, 134 S. Ct. at 2378–81, we separated the question whether someone spoke as a citizen from whether he spoke on a matter of public concern. We employ that approach now, though not all the relevant decisions reflect that methodology, instead collapsing the two questions into one. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 423–24 (2006); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 825–26 (5th Cir. 2007).

that Gibson's speech about the mayor's misappropriation of city funds was in his official capacity as an employee, it might seem to follow that any suit based on that speech likewise was made in his capacity as an employee. Nevertheless, we based our conclusion in *Gibson II* primarily on the fact that by reporting the mayor's misconduct to state and federal authorities, Gibson was fulfilling his duties as a law enforcement officer. *Id.* at 671–72.

In *Lane*, 134 S. Ct. at 2378–79, the Court focused on "the scope of [] ordinary job responsibilities" as the critical factor for whether speech was made as an employee or a citizen, holding that a public employee who was subpoenaed to testify at the criminal trial of an employee he had fired spoke as a citizen rather than an employee. It did not matter that the testimony "relate[d] to his public employment or concern[ed] information learned during that employment," because it was "undisputed" that his "ordinary job responsibilities did not include testifying in court proceedings." *Id.* at 2378 & n.4.

Though reporting misconduct to state authorities may be routine for a chief of police, suing one's supervisor, in his personal capacity, for discrimination surely is not part of one's job description. Unlike the police officer in *Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir.), *cert. denied*, 136 S. Ct. 536 (2015), who, "as part of his job," was invited to speak at a supervisory meeting, Gibson had no obligation to sue Kilpatrick and did so for personal reasons. Under *Lane*, 134 S. Ct. at 2378, it does not matter that Gibson's suit concerned his employment.[2] "[I]dentifying oneself as a public employee does not forfeit one's ability to claim First Amendment protections." *Id.* "[A] citizen who works for the government is nonetheless a citizen." *Garcetti*, 547 U.S. at 419.

---

[2] *See also Graziosi v. City of Greenville*, 775 F.3d 731, 737 (5th Cir. 2015) (holding that police officer's Facebook posts critiquing police-department decisions was speech as a citizen).

If "a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). By filing suit, this is exactly what Gibson did. Thus, in suing the mayor he spoke as a citizen.[3]

## 2.

Even though Gibson spoke as a citizen, he still must show that his suit raised a matter of public concern. "Speech involves matters of public concern 'when it can "be fairly considered as relating to any matter of political, social, or other concern to the community" or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."'" *Lane*, 134 S. Ct. at 2380 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). "[P]ublic concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. On balance, the content, form, and context of Gibson's speech weigh against finding that he spoke on a matter of public concern.[4]

---

[3] We reach this conclusion by applying the ordinary job-duties test, not because Gibson's speech was in the form of a lawsuit. Nonetheless, the fact that his speech appeared in a legal complaint does make this case somewhat more analogous to *Lane*, 134 S. Ct. at 2379, where the Court held that judicial testimony "is a quintessential example of speech as a citizen . . . ."

[4] "[T]he distinctions between [the citizen-employee test and the content, form, context text] [are] somewhat artificial." *Stotter*, 508 F.3d at 826 n.4. In *Stotter* we explained that we were "unable to find a single case in which the application of these varying tests brought the panel to different conclusions." *Id*. Our divergent conclusions here regarding the application of these two tests is because of our focus (following *Lane*) on ordinary job duties as the key to citizen-employee analysis. In cases before *Lane*, we emphasized that one does not speak as a citizen if his speech occurs as part of a "personal employment dispute." *See, e.g.*, *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993). Under such an approach, it would be unlikely that by filing suit, Gibson spoke as a citizen.

a.

First, it is crucial to define the content. Gibson contends that the content of his suit was his exposé of the mayor's misconduct, which is a matter of concern to all citizens. Gibson points to *Graziosi*, 775 F.3d at 738, in which we said that "[i]t is well established that speech exposing or otherwise addressing malfeasance, corruption or breach of the public trust, especially within a police department, touches upon matters of public concern."[5]

Gibson misapprehends what is at issue. He had already spoken to state authorities about the mayor's misappropriation of funds, unmasking Kilpatrick. Thus, in filing suit Gibson was not functioning as a whistleblower. Instead, the content of the suit was the alleged employment grievances—claims of retaliatory discrimination for protected speech and malicious interference with employment—what Kilpatrick did after Gibson reported him to state authorities.

Gibson cannot prevail by demonstrating that his report to the State Auditor was a matter of public concern. In *Gibson II*, 773 F.3d at 672–73, we already have determined that the speech was unprotected. By focusing on the underlying speech to state authorities, Gibson is trying to relitigate *Gibson II*. Instead, he must demonstrate that the employment lawsuit he filed against Kilpatrick in his individual capacity, which sought damages from Kilpatrick personally, was a matter of public concern.

Merely including a First Amendment claim in a lawsuit does not transform it into a matter of public concern. Other circuits have made that plain.

---

[5] *See also Lane*, 134 S.Ct. at 2380 (discussing the importance of public-employee speech in relation to corruption). *But see Gibson II*, 773 F.3d at 669 ("We doubt that this discussion [in *Lane*] means that speech is 'as a citizen' whenever public corruption is involved, as that could conflict with the opinion in *Garcetti*.").

For example, in *Singer v. Ferro*, 711 F.3d 334, 336, 338 (2d Cir. 2013), the plaintiffs, who were corrections officers, sued for retaliation in violation of the First Amendment because of a parody they had created. In an amended complaint, they alleged further retaliation for filing the lawsuit. Citing *Guarnieri*, the Second Circuit rejected that claim, holding that it did not "touch on a matter of public concern solely because the initial suit asserted a First Amendment violation." *Id.* at 342–43. The suit involved only "a personal dispute with the[] [officers'] supervisors. *Id.* at 342.

Similarly, in *Ruotolo v. City of N.Y.*, 514 F.3d 184, 186–87 (2d Cir. 2008),[6] a police officer filed a First Amendment suit claiming retaliation for an official report he had written. He subsequently amended to claim that the suit itself had served as a basis for further retaliation. The Second Circuit analyzed the original complaint and determined that the First Amendment claim was not "a matter of public concern," because it "sought to redress personal grievances." *Id.* at 189.

More recently, in *Morgan v. Covington Township*, 563 F. App'x 896, 898 (3d Cir. 2014), the plaintiff, a police officer, sued alleging First Amendment retaliation when he suffered adverse employment actions after requesting a public hearing on his suspension. He was then fired and sued again, claiming that the termination was in retaliation for the initial suit. The Third Circuit rejected Morgan's claim, explaining "[t]he fact that *Morgan I* asserted a First Amendment violation does not mean that the lawsuit addresses a matter of public concern." *Id.* at 901. Instead, the court applied the content, form, and

---

[6] Gibson contends that *Ruotolo* has been effectively overruled by later Second Circuit decisions such as *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009). Even if he is correct that *Ruotolo* improperly considered motive when analyzing whether the speech was a matter of public concern, that error does not affect the overall import of the case—that including a First Amendment claim does not automatically make a suit a matter of public concern.

context test and concluded that the complaint "addressed matters of personal and private concern." *Id.* at 900–02. In short, other circuits appear to be uniform in concluding that merely including a First Amendment claim does not automatically convert a suit into a matter of public concern.

Although Gibson cites *Oscar Renda Contracting, Inc. v. City of Lubbock*, 463 F.3d 378, 383 (5th Cir. 2006), for the contrary proposition, that case is not dispositive; it involved only whether the plaintiff had sufficiently pleaded a First Amendment retaliation claim under Federal Rule of Civil Procedure 12(b)(6). The plaintiffs filed a complaint asserting that they had experienced First Amendment retaliation, leading to the loss of a contracting bid, for filing a First Amendment retaliation suit. We determined that by stating, in the complaint for the second suit, that the first suit "involved . . . a First Amendment retaliation claim," they "put the City on notice that [the prior suit] . . . implicated matters of public concerns." *Id.* Because proving a First Amendment claim necessarily involves a demonstration that the speech was on a matter of public concern, *Charles*, 522 F.3d at 510 n.2, that statement is unremarkable; it merely concludes that by referencing a particular legal claim, the plaintiff also referenced one of the elements of that claim for purposes of pleading. *Oscar Renda* in no way outlined what is sufficient as a matter of proof.[7]

In sum, we agree with the Second and Third Circuits. The fact that Gibson's suit included a First Amendment retaliation claim is insufficient to make it a matter of public concern, and we must further evaluate its content.

Speech that is "related only to [a] superior's employment decisions" and that affects a plaintiff "in a purely personal manner" is not a matter "of

---

[7] Additionally, *Oscar Renda* was a suit against a public body, not a public employee in his personal capacity. *See infra* note 17.

9

political, social, or community concern."[8] "While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick*, 461 U.S. at 149. Indeed, "[t]he right of a public employee under the Petition Clause . . . is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." *Guarnieri*, 564 U.S. at 399. Thus, an employment dispute brought against a public employer is not, inherently, protected speech.

Nevertheless, one could contend that how the mayor treats the police chief is a matter of public concern, given the public's interest in effective city governance. "[I]n one sense the public may always be interested in how government officers are performing their duties." *Id.* The citizens of Drew might care especially about how their police chief was treated by the mayor after Kilpatrick's misappropriations were exposed by Gibson. Or, more generally, it might interest the public to know that the police chief has been reprimanded by the mayor, regardless of any previous history. "Speech concerning police misconduct is public in content."[9] Thus, the nature of Gibson's suit could, in at least some sense, be called a matter of public concern.

Yet, because "at some level of generality almost all speech of state employees is of public concern," we must be careful not to conclude that speech is

---

[8] *Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir. 1989) (quoting *Day v. S. Park Indep. Sch. Dist.*, 768 F.2d 696, 697 (5th Cir. 1985)).

[9] *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999) (citing *Forsyth v. City of Dall.*, 91 F.3d 769, 773–74 (5th Cir. 1996)). Although Gibson's speech is, strictly speaking, about mayoral misconduct (if anything, he is trying to clear his own name), presumably the public would be similarly interested.

a matter of public concern merely because it involves public employees.[10] Indeed, "management policies that [are] only interesting to the public by virtue of the manager's status as an arm of the government" are not a matter of public concern as that legal term of art is properly understood.[11]

Indubitably, the content of Gibson's suit was a matter of private concern. He sought rectification for himself. At its core, as an employment dispute, the suit is "an internal grievance." *Graziosi*, 775 F.3d at 738. "Internal personnel disputes and management decisions are rarely a matter of public concern." *Stotter*, 508 F.3d at 827.

The suit asks only for personal relief. Gibson did not request "any type of damages implicating the public." He chose not to seek an injunction to prevent the mayor from engaging in such future behavior. In *Singer* and *Ruotolo,* the Second Circuit concluded that requests for personal relief alone counseled against finding that a suit was a matter of public concern.[12]

Nonetheless, "even a mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech." *Stotter*, 508 F.3d at 826. The content of Gibson's suit may be described as a mix of

---

[10] *Gillum*, 3 F.3d at 121. *See also Guarnieri*, 564 U.S. at 399 (explaining that the public's interest in the performance of their governmental officials "will not always suffice to show a matter of public concern").

[11] *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000), *abrogated on other grounds as stated in Cuvillier v. Taylor*, 503 F.3d 397, 401 n.4 (5th Cir. 2007).

[12] *See Singer*, 711 F.3d at 342 (observing that "thrust" of lawsuit was "towards the 'entirely personal' relief of monetary damages for what are, at bottom, allegations of wrongful treatment as employees and wrongful termination"); *Ruotolo*, 514 F.3d at 190 (holding that because the plaintiff's "lawsuit concern[ed] essentially personal grievances and the relief he s[ought] [wa]s for himself alone, the lawsuit [wa]s not speech on a matter of public concern"). Again, this analysis was not called into doubt by the Second Circuit's later decision in *Sousa*, 578 F.3d at 173, which questioned *Ruotolo*'s reliance on motive in determining whether speech was on a matter of public concern.

both personal and private concerns. Yet, considering that the suit sought personal relief and that the facts related internal employment grievances, personal concerns predominate.

b.

Even if we were to reach the opposite conclusion—that the content of Gibson's speech was primarily public—the form of his speech counsels against holding that he spoke on a matter of public concern. The speech was not the act of reporting Kilpatrick to state authorities, nor was it made at a public meeting. Instead, it took the form of a private suit.[13] Though the speech sought relief from a third party—the district court—it was not a whistleblower suit alerting the public of misconduct; instead, it sought assistance in redressing personal grievances.

Importantly, Gibson's suit was against the mayor only in his personal (or individual)[14] capacity. "Personal-capacity suits seek to impose personal liability"; they cannot establish governmental liability. *Graham*, 473 U.S. at 165. "[A]n award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Id.* at 166. For purposes of liability, a suit against a governmental official in his individual capacity is the equivalent of suing one's neighbor. Thus, because they do not concern the public fisc, personal-capacity suits are much less likely to be matters of public con-

---

[13] The act of filing a lawsuit is not entitled to any heightened protection but is governed by the ordinary safeguards for speech. *See Guarnieri*, 564 U.S. at 389 ("The substantial government interests that justify a cautious and restrained approach to the protection of speech by public employees are just as relevant when public employees proceed under the Petition Clause.").

[14] We use the two words interchangeably. *See Kentucky v. Graham*, 473 U.S. 159, 165 n.10 (1985).

cern. Therefore, the form of Gibson's suit—personal capacity—provides significant support for the conclusion that it was not a matter of public concern.

A colorable contrary position is that if First Amendment retaliation suits like Gibson's are not entitled to special constitutional protection, whistleblowers might be deterred from alerting the public of misconduct and might choose to suffer retaliation in silence for fear of further adverse action. That fear of retaliation might further persuade them not to blow the whistle in the first place. In addition to the many other federal and state law protections for whistleblowers,[15] the obvious response is that whistleblowers can bring First Amendment retaliation suits against governmental supervisors in their official capacities, thus implicating the public purse because official-capacity suits look only to the governmental entity for redress. *See Graham*, 473 U.S. at 166.[16] They offer another way to plead an action against a governmental body. *Turner,* 229 F.3d at 483. Although it is not alone sufficient—form must be evaluated alongside the other factors of content and context—a suit brought against a public official in his official capacity, or directly against a public entity, is more easily read as a matter of public concern.[17]

c.

That leaves us with context. "[S]peech is not on a matter of public

---

[15] *See, e.g.*, Whistleblower Protection Act, 5 U.S.C. § 1221 (2012) (creating a cause of action for federal employees who suffer adverse employment actions from exposing illegality, abuse of authority, and the like); MISS. CODE ANN. § 25-9-173 (West 2016) (creating a cause of action for state and local employees who experience workplace reprisal for reporting improper governmental actions to state investigative authorities).

[16] *See also Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 483–85 (5th Cir. 2000).

[17] This is another way to distinguish *Oscar Renda*. The previous suit in that case, which related to a "matter of public concern," was brought against the El Paso Water District. *Oscar Renda*, 463 F.3d at 383.

concern if it is made solely in 'furtherance of a personal employer-employee dispute.'" *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005) (quoting *Kennedy*, 224 F.3d at 372). There is nothing to indicate that Gibson's speech occurred "against a backdrop of widespread debate in the community."[18] Instead, the lawsuit was filed in the context of a continuing feud between the mayor and Gibson.

First, Kilpatrick opposed Gibson's application to be Chief of Police. Then, four months after starting his new job, Gibson spearheaded an investigation into the mayor's use of the gasoline card by reporting it to state authorities. Nine months after that investigation had concluded, Kilpatrick began "entering written reprimands into Gibson's personnel file" and complaining to city alderman about Gibson's "insubordination, lack of visibility in the community, and failure to work an adequate number of hours." *Gibson II*, 773 F.3d at 665. Multiple alderman indicated that the two men were unable to work together; one testified that he thought there was "something between the chief and mayor personally" and claimed that "90 percent" of board meetings were spent "between chief and the Mayor fussing and carrying on."

Further, there was a four-year gap between Gibson's report to state authorities, exposing Kilpatrick's misconduct, and his suit against the mayor.[19] It is possible that Gibson's employment troubles during this time were because of his report, as he contends, but the gap also lends credence to the city's claim

---

[18] *Markos v. City of Atlanta,* 364 F.3d 567, 572 (5th Cir. 2004) (holding that a police officer's speech to a journalist made in the context of a continuing public commentary was a matter of public concern).

[19] There were only two years, however, between the conclusion of the state's investigation and Gibson's suit. It is not clear at what point Kilpatrick learned of Gibson's report. Yet, even two years attenuates the connection between Gibson's speech and Kilpatrick's actions, because it is entirely possible that there were other things about which they disagreed during this time.

that the men were feuding because of numerous matters.

In sum, though it is not dispositive, the underlying context of the suit indicates an ongoing personal feud between Kilpatrick and Gibson, which might help to explain why Gibson sued Kilpatrick in his personal capacity. Because personal employment disputes are not, by themselves, matters of public concern, the context of Gibson's speech further strengthens the conclusion that his suit does not qualify.

d.

Taken as a whole, all three of the factors—content, form, and context—support the conclusion that the suit was a matter of private concern. In mixed-speech cases, we conduct a balancing of all three factors. *See Teague*, 179 F.3d at 382. Within this balancing, we weigh context and form "more heavily." *Teague*, 179 F.3d at 383. Though the content of Gibson's suit was a mix of private and public concerns, private concerns predominate. Both the form and context of the suit show that it was a matter of private concern. Thus, we need not go on to weigh Gibson's interests in speaking against the city's interests in promoting efficiency. In short, the district court was correct: Gibson's First Amendment retaliation claim fails.

B.

Gibson assigns error to the district court's dismissal of his MIE claim because it concluded that under the MTCA he needed to file notice. The MTCA requires a person to "file a notice of claim with the chief executive officer of the governmental entity" at least ninety days "before instituting suit." MISS. CODE ANN. § 11-46-11 (2016). "[A]n action against a government employee in his individual capacity may be subject to notice of claim requirements if the act

complained of occurred within the scope and course of his employment."[20] It is undisputed that Gibson never gave any such notice.

Gibson points out, however, that his MTCA claim was for *malicious* interference with employment; he contends that claims alleging malice are exempt from the notice requirement. He is correct that notice is not required if the public employee's "conduct constituted fraud, malice, libel, slander, defamation or any criminal offense," because the governmental entity is not liable for such actions. *Id.* § 11-46-5.

Gibson's position is foreclosed by *Johnson*, in which we addressed the identical issue of whether, under Mississippi law, the tort of MIE is a crime of malice or merely a tortious-breach-of-contract claim.[21] Noting inconsistent caselaw from the Mississippi Supreme Court, we relied on the fact that cases holding that MIE is a breach-of-contract claim were more recent, so we concluded that notice is required.[22] *Johnson* easily disposes of Gibson's claim.[23]

---

[20] *Johnson v. City of Shelby*, 743 F.3d 59, 63 (5th Cir. 2013) (quoting *McGehee v. DePoyster*, 708 So. 2d 77, 79–80 (Miss. 1998)), *rev'd on other grounds*, 135 S. Ct. 346 (2014) (per curiam). Gibson does not claim that he was exempted from notice requirements because he sued Kilpatrick in his individual capacity.

[21] *Id.* at 63–64.

[22] *Id.* at 64 (explaining that "we apply 'the latest and most authoritative expression of state law applicable to the facts of a case'") (quoting *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997)).

[23] Gibson tries to avoid *Johnson* by pointing to a footnote that states that "[p]ursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent . . . . 47.5.4." *Id.* at 60 n.*. That standard footnote, included in all unpublished opinions as required by Fifth Circuit Rule 47.5.4, appeared because when *Johnson* was first issued, it was unpublished. Later, we granted a motion to publish but never reissued the opinion, so the footnote mistakenly remained. *Johnson* nonetheless is binding precedent under 5TH CIR. R. 47.5 because it was published and appears in the West Federal Reporter, Third Series. "An opinion is considered as 'published' for purposes of this rule when the panel deciding the case determines, in accordance with 5TH CIR. R. 47.5.2, that the opinion will be published . . . ." 5TH CIR. R. 47.5.5. "If . . . any party so requests the panel will reconsider its decision not to publish . . . . The opinion will be published if . . . the panel issues an order to publish . . . ." 5TH CIR. R. 47.5.2. "[A]n opinion is published if it . . . (f) is rendered in a

Alternatively, Gibson maintains that we should certify the question to the Mississippi Supreme Court. We certify "only in 'exceptional case[s]."[24] Gibson points to no intervening authority since *Johnson* that would make certification advisable. Thus, his claim of MIE also fails.

AFFIRMED.

---

case that has been reviewed previously and its merits addressed by an opinion of the United States Supreme Court." 5TH CIR. R. 47.5.1.

[24] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 290–91 (5th Cir. 2012) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 920 F.2d 259, 262 (5th Cir. 1990)).